THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLICK CORPORATION OF AMERICA, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 05-1036 (JBS) |
| v. | |
| REDCO FOODS, INC., | **OPINION** |
| Defendant. | |

APPEARANCES:

Francis P. Maneri, Esq.
Carl Hanzelik, Esq.
Marci Ciesla, Esq.
DILWORTH PAXON LLP
1735 Market Street
3200 Mellon Bank Center
Philadelphia, PA 19103
     Attorney for Plaintiff

Clement S. Farley, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center, 100 Mulberry Street
Newark, New Jersey 07102
     and
Michael E. Getnick, Esq.
GETNICK LIVINGSTON ATKINSON GIGLIOTTI & PRIORE LLP
258 Genesee Street, Suite 401
Utica, NY 13502
     Attorneys for Defendant

**SIMANDLE**, District Judge:

This matter comes before the Court upon Defendant Redco Foods, Inc.'s motion to dismiss the Second Amended Complaint filed by Plaintiff Click Corporation of America. Plaintiff's original complaint arises out of a business dispute between the parties involving a long-standing license and distributorship

agreement.  For the reasons expressed below, Defendant Redco Foods, Inc.'s motion to dismiss will be granted and all four of Plaintiff Click Corporation of America's claims will be dismissed.

I.   <u>**BACKGROUND**</u>

Redco Foods, Inc.'s ("Redco") is in the business of manufacturing, distributing and selling various tea products, including extracts for use in the preparation of ready-to-drink iced tea, under the trademark RED ROSE.  (Second Amended Compl. ("SAC") ¶ 5.)   Plaintiff Click Corporation of America ("Click") and Redco's predecessor (Brook Bond Foods, Inc.) entered into a license and distributorship agreement ("Agreement") on October 1, 1982, under which Click was licensed to make, bottle, distribute and sell Red Rose Iced Tea and was appointed the exclusive distributor of that product for the entire geographical region east of the Mississippi River.  (SAC ¶ 6-7.)  The parties subsequently agreed that Click could distribute and sell Red Rose Iced Tea throughout the remainder of the U.S. on a non-exclusive basis.  (<u>Id</u>. ¶ 8.)

A.   **The Distributorship Agreement**

For the past 23 years, Click has been making, distributing and selling Red Rose Iced Tea.  (<u>Id</u>.)  Under the terms of the Agreement Redco is to sell Click the extract with which Red Rose Iced Tea is made and Click is to make, bottle, market, distribute

2

and sell the tea.  (Id. ¶ 10.)  A number of specific provisions of the Agreement are implicated in this action.  First, Section 3(a) states that, in consideration for the Agreement, Redco agrees:

> To sell to Click during the term of this Franchise Agreement its requirements of the said Extract at [Redco's] regularly established list prices for Red Rose Iced Tea Extract Kits.  Kits and Extracts may not be sold, loaned or delivered to any other bottler without written permission of the Redco. [Redco] will not withhold approval without providing reasonable and written cause.  Such sales shall be on the same terms and conditions as are extended to other bottler customers.  **Nothing in this contract shall prohibit the Company from discontinuing the distribution and sale of Extract.**

(Def.'s Br. at Ex. A, Agreement § 3(a))(emphasis added).[1]  In addition, the Agreement contains a termination provision which states that the Agreement "shall continue in full force and effect, subject to the termination privileges...provided for, so long as [Click] shall faithfully perform the obligations imposed upon it by the terms hereof."  (Id. at § 5.)  Moreover, the Agreement contains an assignment clause stating:

> No contracts will be made with sub-bottlers, agents or distributors or anyone having to do with the bottling or wholesale selling of the Product except upon and with the prior written consent of the Company.  The Company will not withhold approval without providing reasonable and written cause.  This Franchise Agreement or any portion of the territory assigned hereunder, shall not be transferable or assignable by [Click] except upon and with the prior written consent of [Redco.]

---

[1]  This provision shall be referred to as "Paragraph 3(a)."

(<u>Id</u>. at § 7(a).)  Finally, the Agreement states that it is to be construed in accordance with New York law.  (<u>Id</u>. at § 7(d).)

### B.  Redco's Actions After Click's Business Begins to Decline

Click and Redco had many profitable years of Click selling Red Rose Iced Tea under the Agreement.  (SAC ¶ 15.)  However, according to Click, the market for ready-to-drink iced tea changed when large beverage manufacturers such as Coca-Cola began distributing such teas.  (<u>Id</u>.)  Click was not able to compete with the prices, incentives and services offered by large beverage manufacturers.  (<u>Id</u>.)  Thus, sales of Red Rose Iced Tea declined.  (<u>Id</u>.)

In February of 2005, Redco's new General Manager, Douglas Farrell, expressed to Click that Redco wanted to end the Agreement in exchange for paying Click a nominal sum.  (<u>Id</u>. ¶ 18.)  Click declined this offer and instead advised Redco that it sought $10 million to end the Agreement.  (<u>Id</u>. ¶ 19.)  By letter dated February 18, 2005, Redco responded, asserting that Click had breached the Agreement and a letter of termination would be forthcoming.  (<u>Id</u>. ¶ 20.)  No such letter was sent, however, and, instead, Redco stopped responding to Click's purchase orders.  (<u>Id</u>. ¶ 21.)  Click maintains that Red Rose Iced Tea is the only product that it sells.  (<u>Id</u>. ¶ 12.)

On May 11, 2005, Redco sent Click a letter stating that the Agreement will terminate effective May 25, 2005 on the grounds

that Click allegedly failed to comply with the terms and
conditions of the Agreement.  (Id. ¶ 24.)  Click alleges that,
shortly prior to June 22, 2005, Redco informed Click for the
first time that (a) Redco had decided to discontinue the
distribution and sale of extract pursuant to Paragraph 3(a) of
the Agreement, and (b) Redco's position was that invoking that
provision of Paragraph 3(a) would effect termination of the
Agreement.  (Id. ¶ 28.)  According to Click, Redco then
abandoned its strategy of seeking to eliminate Click in a manner
that would preserve Redco's right to continue selling and
distributing extract so, on July 7, 2005, Redco sent Click a
letter stating that it was discontinuing the distribution of Red
Rose Iced Tea Extract pursuant to the last sentence of Paragraph
3(a) of the Agreement.  (Id. ¶ 29.)

    **C.**    **Procedural History**

On May 25, 2005, Click filed an Amended Complaint and a
Renewed and Amended Motion for a Temporary Restraining Order
seeking an Order enjoining the termination of the Agreement to
preserve the status quo pending a preliminary injunction hearing.
(Id. at ¶ 25.)  After a hearing on Click's Renewed and Amended
Motion for a Temporary Restraining Order on June 3, 2005, the
Court granted a Temporary Restraining Order and scheduled a
Preliminary Injunction hearing for July 28, 2005.  (Id. ¶ 26.)
At the conclusion of the July 28, 2005 hearing, in an extensive

oral opinion addressing the substance of Plaintiff's claims, the
Court found, among other things, that Click did not have a
probability of succeeding on the merits in establishing that
invoking Paragraph 3(a) of the Agreement did not effect
termination of the Agreement, and issued an Order dissolving the
Temporary Restraining Order.  (Id. ¶ 31; Tr. July 28, 2005 at 72-
85.)

On August 8, 2005, with limited permission from the Court,
Click filed its Second Amended Complaint [Docket Item No. 23].[2]
In the SAC, Click brought claims for: breach of contract (Count
I); breach of the implied covenant of good faith and fair dealing
(Count II); restitution for unrecovered costs Click incurred
under the Agreement (Count III); and declaratory judgment
regarding ownership of the trademark RED ROSE (Count IV).  (Id.
at 35-47.)


II.  DISCUSSION

   A.  Standard for a 12(b)(6) Motion to Dismiss for Failure
       to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts

---

[2]  As this Opinion will discuss infra, Section III.D.,
whether Click's Second Amended Complaint exceeds the scope of
this permission is contested.

6

in support of his claim which would entitle him to relief."
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court
must accept any and all reasonable inferences derived from those
facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761
F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank,
748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must
view all allegations in the complaint in the light most favorable
to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox,
Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

        It is not necessary for the plaintiff to plead evidence, and
it is not necessary to plead the facts that serve as the basis
for the claim.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446
(3d Cir. 1977); In re Midlantic Corp. Shareholder Litig., 758 F.
Supp. 226, 230 (D.N.J. 1990).  The question before the court is
not whether a plaintiff will ultimately prevail; rather, it is
whether he can prove any set of facts in support of his claims
that would entitle them to relief.  See Hishon v. King &
Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a
motion to dismiss, a court should look to the face of the
complaint and decide whether, taking all of the allegations of
fact as true and construing them in a light most favorable to the
nonmovant, plaintiff's allegations state a legal claim.
Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.
1990).  Only the allegations in the complaint, matters of public

record, orders, and exhibits attached to the complaint matter, are taken into consideration.  <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990). In the present instance, therefore, the parties' contract may be construed in light of the undisputed fact that Redco has discontinued the sale of extract under Paragraph 3(a) thereof.

> **B.   Count One - Breach of Contract**

In Count One, Click argues that Redco's actions of (1) "failing to disclose its position that invoking the right to discontinue the sale of extract under Paragraph 3(a) of the Agreement effected termination of the Agreement" and (2) allegedly preventing Click from selling "the Red Rose Ice Tea franchise under the Agreement to a larger distributor" amounted to a "wrongful breach of the Agreement."  (SAC ¶ 34, 35 and 37.) Redco argues that Paragraph 3(a) of the contract is clear and unambiguous and in fact, the parties have agreed to as much. (Transcript of Oral Argument, Oral Opinion, dated 7/28/05, at 73.)  As such, the claim of breach is contrary to the plain language of the Agreement that specifically allows Redco to discontinue selling extract to Click.  Further, Redco argues that, Click cannot recover for any alleged missed business opportunity because (i) Click had no rights to sell or assign under the Agreement and therefore, Redco's actions had no effect on Click's right to sell, (ii) Redco had no obligation to

preserve Click's ability to sell, and (iii) Redco gave Click nine months notice of Redco's intention to terminate the Agreement. (Def.'s Br. at 5-10.)

Click argues that Redco's arguments demonstrate that Redco misunderstands Click's allegations.  According to Click, the "breach of the Agreement was not Redco's decision to discontinue the sale of extract under Paragraph 3(a) of the Agreement, but rather Redco's termination of the Agreement based on its discontinuing the sale of extract."  (Pl.'s Opp. Br. at 2.) Click argues further that "[i]f, as the [SAC] alleges, Redco did not have the right to terminate the Agreement based on having discontinued the sale of extract, Redco's termination of the Agreement on that basis breached the Agreement, and Redco is liable for the damages sustained by Click."  (Id. at 3.)  Thus, Click asserts that, even if Redco could unilaterally discontinue selling the extract under the Agreement, that Redco nonetheless breached the Agreement by terminating Click as its distributor for the extract.

Second, Click takes issue with the fact that Redco's argument that Click cannot recover damages under a breach of contract claim for having been wrongfully deprived of the opportunity to sell its rights under the Agreement because Redco had a right to approve Click's intended transfer.  Specifically, Click submits that arguments that Redco would not have given such

9

approval "has no place in a Rule 12(b)(6) motion because whether Redco would have given approval of Click is a question of fact." (<u>Id</u>.)  Because Paragraph 35 of the SAC alleges that Redco would have given this approval, Click asserts that this Court must "for the purposes of its instant motion...accept all well-plead allegations in the [SAC] as true, and view them in the light most favorable to plaintiff." (<u>Id</u>.)  The Court will address both allegations in Count One independently.

### a.    Termination of the Contract

The question here is whether Redco's decision to discontinue the sale and distribution of extract effectively terminates the Agreement.  The matter turns on this Court's interpretation of the contract, a matter of law that is properly considered on a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Painewebber, Inc. v. Bybyk</u>, 81 F.3d 1193, 1199 (2d Cir. 1996)("where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may thus be determined by summary judgment or dismissal.")(internal quotations omitted).  Because the Agreement is to be construed under New York law, this Court's analysis is guided by New York law relating to contract interpretation. (Agreement ¶ 7(d))  The law in New York is clear: where, as here, a contract is unambiguous, the court must effectuate its plain language.  <u>See</u> <u>Seabury Constr. Co. v. Jeffrey Chain Corp.</u>, 289

F.3d 63, 68 (2d Cir. 2002).[3]  Moreover, a court must interpret a contract in order "to give effect to the intent of the parties as expressed in the clear language of the contract."  Morgan Stanley Group, Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000).

The language in Paragraph 3(a) of the Agreement is clear. Paragraph 3(a) permits Redco to do exactly what they did - discontinue the distribution and sale of the extract.  The parties' selection of the words "[n]othing in this contract shall prohibit..." is significant.  The plain language can only mean that that the parties' intended that no provision of the Agreement (not other sections, clauses or the recitals) could ever or should ever be construed or understood as taking away Redco's ability to end the sale and distribution of the extract. For this Court to rule otherwise, and find that the parties somehow intended to limit Redco's rights in this regard (perhaps because doing so would effectively terminate the Agreement) would be to ignore the plain language that these parties chose for their contract.  Moreover, any alternative interpretation would lead to an absurd result, as it would require Redco to continue selling and distributing extract in perpetuity so long as there

---

[3]  See Slamow v. Del Col, 79 N.Y.2d 1016 (1992); Chimart Assocs. v. Paul, 66 N.Y.2d 570 (1986)(noting that the meaning of an unambiguous provision should be gleaned from the face of the instrument.")

is not an earlier termination for cause.  Such an interpretation would render Paragraph 3(a) devoid of meaning, when in fact it stands out as a powerful and independent contractual right to exit the extract business, which is conferred upon Redco.  Thus, Click can prove no set of facts under which Redco would be liable for breach of contract by Redco simply doing what the plain language of the Agreement clearly allows them to do.

### b.   Click's Claims for a Missed Business Opportunity

Click's allegations that Redco's failure to continue selling extract deprived Click of the ability to sell its rights under the Agreement must also be dismissed.  This claim fails because Click, acting on its own, had no rights to sell or assign under the Agreement.  Paragraph 7(a) of the Agreement states that Click's rights under the Agreement "shall not be transferable or assignable by [Click] except upon and with the prior written consent of [Redco.]"  (Pl.'s Br. Ex. A ¶ 7(a).)  Unlike other provisions in ¶ 7(a), the assignment provisions is not subject to any reasonableness requirement meaning that Redco could have withheld consent to assign for any reason or no reason at all.  See Teachers Ins. and Annuity Ass'n of Am. v. Wometco Enter., Inc., 833 F. Supp. 344, 349 (S.D.N.Y. 1993).

Furthermore, even if Click could transfer its rights under the Agreement for a monetary gain, Click's claim fails because Redco had no duty to preserve Click's ability to transfer its

rights under the Agreement.  There is simply nothing in the
Agreement that places such a duty upon Redco.  In fact, the
Agreement states just the opposite as the Agreement: (1) gives
Redco the absolute right to discontinue the sale and distribution
of extract and (2) limits Click's use of the RED ROSE trademark
and its right to bottle and distribute RED ROSE Ice Tea to <u>only</u>
ice tea made from extract sold by Redco.[4]  (Pl.'s Br. Ex. A ¶¶ 1-
2.)

---

[4]  Click argues that the question of whether Redco would
consent to Click transferring its rights under the Agreement "has
no place in a Rule 12(b)(6) motion."  In the SAC, Click has plead
that "Redco would have given approval to [Click's] sale to a
larger beverage distributor."  (SAC ¶ 35.)  Click argues that
because, for purposes of a motion to dismiss, this Court must
accept all of the facts in Click's SAC as true, the Court must
accept as true the fact that Redco would have allowed Click to
transfer Click's rights under the Agreement.

     The Third Circuit has noted, however, that "while our
standard of review [of a motion under Rule 12(b)(6)] requires us
to accept as true all factual allegations in the complaint, we
need not accept as true unsupported conclusions and unwarranted
inferences."  <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 485 (3d Cir.
2000) (internal citations omitted).  Courts have an obligation in
matters before them to view the complaint as a whole and to base
rulings not upon the presence of mere words but, rather, upon the
presence of a factual situation which is or is not justiciable.
The Court stated that it would draw on the allegations of the
complaint, but in a realistic, rather than a slavish manner.  <u>See
id.</u> (<u>citing</u> <u>City of Pittsburgh v. West Penn Power Co.</u>, 147 F.3d
256, 263 (3d Cir. 1998)).

     Here, applying the principles in <u>Maio</u> and <u>City of
Pittsburgh</u>, the Court will not accept as true such wholly
unsupported conclusions that Click would have given approval as
it is clear that, because Redco is discontinuing the sales and
distribution of extract altogether, it is illogical to think
Redco would agree to Click's attempts to assign or sell any
rights in the Agreement.  Rule 12(b)(6) requires acceptance of
the Complaint's allegations unless there is no set of facts in
support of Plaintiff's claim which would entitle Plaintiff to
relief, <u>Scheuer v. Rhodes</u>, <u>supra</u>, 416 U.S. at 236; here, no
reason, logic or common sense supports the notion that Redco, in
ending its business of selling iced tea extract altogether, would
somehow have approved Click's transfer of rights to distribute
the defunct product.

Thus, Click cannot prove any set of facts establishing that (1) Click had the right to sell or assign any of its rights in the Agreement or in the RED ROSE trademark and (2) that Redco had a duty to preserve Click's rights to transfer its rights under the Agreement.  Thus, Count One will be dismissed.

**B.    Count Two - Breach of Covenant**

In Count II of the SAC, Click alleges that Redco's conduct breached the Agreement's implied covenant of good faith and fair dealing.  (SAC ¶ 39-40.)  In its brief in support of its motion to dismiss, Redco argues that Click cannot maintain a claim because a party cannot rely on the implied covenant of good faith and fair dealing to nullify the express terms of the parties' contract.  (Pl.'s Br. at 13.)  In addition, Redco argues that (1) the Agreement does not contain any express restrictions or conditions of Redco's ability to discontinue the sale and distribution of extract that would subject Redco's actions to a reasonableness standard, but if it did, Redco has acted reasonably and in good faith (as it is discontinuing the sale and distribution of the extract due to significant declines in sales and has given Click nine months notice of Redco's plans.)  (<u>Id</u>. at 14-15.)

Click argues that its breach of contract claim is not based on Redco's discontinuance of the sale of extract but rather on Redco's conduct from February 2005 to May 2005 "in taking actions

14

to eliminate Click as a distributor while seeking to preserve its rights to sell extract" by using Paragraph 3(a) to "effect[] termination of the Agreement."  (Def.'s Br. at 6.)  Thus, Click appears to argue that Redco breached the covenant of good faith and fair dealing by not disclosing its "intentions with respect to Paragraph 3(a) of the Agreement if it otherwise was unsuccessful in eliminating Click...."  (Pl.'s Opp. Br. at 6.)

The Court recognizes that, under New York law, every contract has an implied covenant of good faith and fair dealing. See M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990.)  "As it is the written contract that governs the relationship between the parties, a court is not at liberty to impose obligations inconsistent with those imposed under the written agreement."  Sterbenz v. Attina, 205 F. Supp. 2d 65, 70 (E.D.N.Y. 2002) citing Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992).  Accordingly, under New York law, a party cannot be held liable for breaching the implied covenant of good faith and fair dealing if the party "has acted in compliance with the rights expressly provided in the governing contract."  Sterbenz, 205 F. Supp. 2d at 70.  Moreover, the implied covenant cannot be used to "have [the] court create an additional benefit for which [the parties] did not bargain...."  Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989); see Broder v.

15

Cablevision Sys. Corp., 418 F.3d 187, 1998-99 (2d Cir. 2002).
The covenant does not "add[] to the contract a substantive
provision not included by the parties."  See Broder, 418 F.3d at
199 (quoting Geren v. Quantum Chem. Corp., 832 F. Supp. 728, 732
(S.D.N.Y. 1993).

Here, Click is attempting to use the covenant of good faith
and fair dealing in a manner strictly prohibited under New York
law as Click tries to insert into the Agreement, an obligation on
the part of Redco to give Click notice of its intentions to
exercise its contractual rights under Paragraph 3(a).  If this
Court allowed such a result, the decision would be in clear
contradiction to Sterbenz, Metropolitan Life Ins. Co. and Geren.
Allowing this claim to advance would hold a party to a contract
liable for exercising rights expressly granted in the contract
and create an additional benefit on the part of Click.

While it is true that the covenant of good faith and fair
dealing exists to give a party to a contract a cause of action
should the other party do "anything [that] will have the effect
of destroying or injuring the right of the party to receive the
fruits of the contract," there are clearly limits to this
doctrine.  1-10 Indust. Assoc., LLC v. Trim Corp. of Am., 297
A.D.2d 630, 631 (N.Y. App. Div. 2002) citing Dalton v. Educ.
Testing Serv., 87 N.Y.2d 384, 389 (N.Y. 1995).  If a loan
agreement contains a provision allowing the lender to terminate

16

the agreement and accelerate the loan upon the borrower's
default, surely the lender cannot be held liable for breach of
the implied duty of good faith and fair dealing because
terminating the agreement "will have the effect of
destroying...the right of the party to receive the fruits of the
contract."  Nor is this a case where Redco, while acting within
its unilateral right to terminate its iced tea extract business,
somehow did so in a tricky or underhanded way, such as by
"changing its mind" after termination and striking a new deal
with a new extract distributor.  Instead, Redco here gave months
of notice to Click of its decision to end its extract sales and
it has not acted in any manner contrary to its right to do so,
even though Click is displeased by Redco's decision.  Thus, Count
Two will also be dismissed.

### C.   Count Three - Restitution

In Count Three of its SAC, Click alleges that Redco's
decision to discontinue distribution and sale of extract
"effectively was a termination for convenience" and as such,
"Redco is obligated to compensate Click for the unrecovered costs
it incurred under the Agreement."  (SAC ¶ 42.)  Redco argues
first that, since Click does not (and cannot) allege that
Paragraph 3(a) is actually a termination for convenience clause,
Click must claim that Redco is liable for damages because its
decision to discontinue the sale and distribution of extract

"effectively was a termination for convenience."  (Pl.'s Br. at
16.)

      Redco argues that there is no legal authority to suggest
that a private party can impose liability based on a theory of
"constructive" or "effective" termination by convenience.  (Id.)
Rather, a termination for convenience clause is designed to limit
a party's liability for terminating a contract and there is no
authority for use of the doctrine to affirmatively assert as a
basis for the recovery of damages in a case where such damages
were not provided for in the underlying contract.  Moreover,
Redco reiterates that it did not terminate the contract for
convenience - rather it simply exercised its rights under one
provision of the contract to discontinue the sale and
distribution of extract.  (Id. at 16-17.)

      In its opposition papers, Click raises two arguments.  Click
first argues that, while acknowledging that Paragraph 3(a) does
not actually state that a decision to discontinue the sales and
distribution of extract is a termination for convenience
entitling Click to recover its costs, Click points out that
Paragraph 3(a) also does not actually state that a decision to
discontinue the sale of extract terminates the Agreement.  (Pl.'s
Opp. Br. at 7-8.)  Second, Click acknowledges that it has no
legal authority in support of its attempts to use a termination
for convenience clause to recover costs incurred by virtue of a

18

clause that works to "effectively" allow for convenience. Rather, this issue is one of first impression and, because "basic contract law indicates that New York would find that such a cause of action exists," dismissal is inappropriate.

Through the allegations of Count Three and its arguments in opposition of Redco's motion, Click attempts (1) to convert Paragraph 3(a) into somethng that it is not and (2) have this Court rule in a manner that is contrary to New York law.  First, Click's argument that Paragraph 3(a) effectively constitutes a termination for convenience clause is unpersuasive.  For this Court to hold that Paragraph 3(a) is a termination for convenience provision would be to ignore the plain language of the contract.   Paragraph 3(a) simply allows Redco to discontinue the sale and distribution of extract - not to terminate the contract for convenience.

Second, it is clear that, under New York law, a termination for convenience provision is intended to limit the liability of one of the contracting parties - not to give the non-terminating a party cause of action to recover costs in the event a party exercises its right to terminate for convenience.  Third, in allowing Click to obtain damages in the event Redco exercises its rights under Paragraph 3(a), the Court would essentially be giving Click additional rights that are neither present in the contract nor were bargained for by the parties.  The Court

19

declines to supply such a substantive provision in the face of unambiguous contractual rights and remedies already bargained for.  Certainly if the parties had intended for Click to have such a remedy in the event of termination for convenience by Redco, language granting the remedy would have been included in the Agreement.  Allowing an action for restitution against Redco for exercising its rights under Paragraph 3(a), then, would be to ignore the plain meaning of the contract - an act prohibited under New York law.

### E.    Count Four - Declaratory Judgment

In Count Four, Click seeks a declaratory judgment as to "the rights of the parties to the RED ROSE trademark."  (SAC ¶ 44-47.) Specifically, Click avers that "[a] question exists whether the entity that purported to assign the exclusive license for the trademark, and the entity that purported to assign ownership of the trademark to Redco were the owners of the rights they purported to assign, and thus, whether Redco is the licensee or owner of the trademark."  (Id. at ¶ 46.)   Redco argues that Count Four should be dismissed because (1) Click's inclusion of a request for declaratory judgment in the SAC was outside of the scope of the leave to amend this Court granted, and (2) Click has failed to satisfy even the liberal pleading standards of Fed R. Civ. P. 8(a) because Click has failed to include any factual allegations in Count Four.  Click counters by arguing that Count

20

Four does in fact contain sufficient factual allegations to satisfy the liberal pleading standards of Rule 8(a).[5]

On July 28, 2005, Click asked the Court for permission to file a SAC for the purposes of adding a claim for monetary damages.[6]  (Transcript of Oral Argument, dated 7/28/05, at 71-72.)  This ruling was memorialized in an Order from this Court on July 29, 2005 stating that "Plaintiff Click Corporation of America shall be permitted to amend its Complaint to seek damages within a period of time not to exceed ten (10) days from the date of this Order." [Docket Item No. 22.]

The limitations that Click sought and this Court placed on the scope of Click's leave to amend were clear.  What is also clear is that Count Four of the SAC goes far beyond the

---

[5]  Click failed to directly address, however, Redco's argument that, in seeking a declaratory judgment, Click exceeded the scope of this Court's leave to amend.

[6]  The transcript from this hearing reads as follows:

    MR. HANZELIK:  And I also,...I would request leave to amend our complaint to put in a complaint for damages as well.

                    *    *    *

    THE COURT:  All right.  I'll permit the complaint to be amended as well to seek a second type of relief beyond injunctive relief, which would be a complaint for damages.

(Transcript of Oral Argument, dated 7/28/05, at 71-72.)(emphasis added).

constraints of the leave to amend as it includes a declaratory judgment in addition to claims for money damages.  Because Click did not have leave to amend its complaint to add a cause of action seeking a declaratory judgment regarding the ownership of the RED ROSE trademark, Count Four of the SAC must be dismissed.

The Court notes that Click has not requested leave to amend to file a Third Amended Complaint.[7]  Click's minimal effort in its request lacks any discussion regarding why leave to amend (a) would not cause undue delay or be prejudicial to Redco or (b) would not be futile - factors that a district court must weigh when considering whether to grant a plaintiff's motion for leave to amend.[8]

_____

[7]  In its brief, Redco mentions that Click included in a footnote to its opposition papers [Docket Item No. 30, p. 11, n. 2) a request for leave to amend.  This footnote was not reproduced in the brief submitted to the Court.

[8]  Under Fed. R. Civ. P. 15(a), if a responsive pleading has been served on plaintiff, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party."  Id.  Leave to file an amended complaint "shall be freely given when justice so requires."  Id.; see Foman v. Davis, 371 U.S. 178 (1962)(a motion for leave to amend under Rule 15(a) should be freely granted); Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984), cert. denied, 469 U.S. 1122 (1985).  Although liberally granted, the decision to grant leave to amend a complaint rests within the sound discretion of the trial court under Fed. R. Civ. P. 15(a), see Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), but a liberal amendment philosophy under the Federal Rules of Civil Procedure limits the district court's discretion to deny leave to amend. See Adams, 739 F.2d at 864.  Thus, the district court may only deny leave to amend (a) if the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) if the amendment would be futile (i.e., the

(continued...)

This Court finds that, even if Click had properly sought leave to amend in order to file a Third Amended Complaint containing a declaratory judgment, the Court would not have granted such leave.  According to the Third Circuit's holding in Berger, a district court may properly deny leave to amend if the amendment would introduce new and substantially broader claims that would put an unwarranted burden on the trial court or result in prejudice to defendant.  At this stage in the litigation, Click has submitted three versions of the complaint.  Only in the SAC did Click attempt to expand the scope of this case from a straightforward breach of contract matter to one seeking a declaratory judgment requiring the Court to delve into Redco's claim of ownership of the RED ROSE trademark as part of a declaratory judgment action.  There can be no question that, in Count Four, Click intends to "introduc[e]...new and substantially broader claims" into this matter and thus, this Court can properly deny Click's motion for leave to amend on this grounds.

The Court also finds that allowing Click to amend the SAC to include a declaratory judgment action is futile because this count is subject to dismissal under Rule 12(b)(6).  Under Count Four of the SAC, Click would have virtually no chance of succeeding in obtaining a declaratory judgment because, although

_____

[8](...continued)
amendment fails to state a cause of action).  See id.; see also Massarsky, 706 F.2d at 125.

Click has used the RED ROSE trademark since 1982, at all times Click's use of the mark was done under a license and all of Click's rights in the mark were set out in the Agreement and Plaintiff has failed to allege that they had rights beyond the scope of the Agreement.  In fact, the parties specifically agreed that Click would not acquire any ownership interest in the trademark through its use under the license.  Paragraph 4(d) of the Agreement states:

> [Click] recognizes the sole ownership by [Redco] of Product trademarks and trade names and nothing herein contained shall be considered as giving [Click] any right in connection with the trademarks or trade names or the good will connected with such trademarks or trade names of any product produced by [Redco] other than as hereinbefore provided....

(Agreement ¶ 4(d).)  Furthermore, Click expressly agreed, in two separate provisions of the Agreement, that Click's right to use the RED ROSE trademark ends when the Agreement ends.  (Agreement ¶¶ 3(c), 4(e)).[9]

Given these facts, allowing Click to amend would be futile because, in Count Four, Click failed to plead any factual allegations suggesting that Redco's ownership of the trademark was in dispute, that the records of the U.S. Patent and Trademark

---

[9]  Specifically, in Paragraph 3(c), Click agreed that "upon the effective date of the termination of this Agreement...[Click will] immediately discontinue the use of" the RED ROSE trademark. (Agreement ¶ 3(c).)  In Paragraph 4(e), Click agreed that "[u]pon the termination of this Agreement for any reason, [Click] shall...not thereafter use [the RED ROSE] trademark in any manner whatsoever."  (Agreement ¶ 4(e).)

Office listing Redco as the owner are incorrect, or that despite the express language of the Agreement stating otherwise, Click has acquired any rights in the trademark by virtue of their use of the mark under the Agreement.  Click also failed to allege how title to the RED ROSE trademark is disputed given that Click has continuously used the RED ROSE trademark under a license and never previously disputed Redco or Brook Bond Foods' (Redco's predecessor-in-interest) ownership of the trademark.  Moreover, Click failed to allege how they are entitled to ownership of the mark as the Agreement expressly stated (a) that Click would acquire no ownership rights in the mark and (b) that their right to use the mark would end when the contract ends.  A trademark claim of invalidity must be plead with reasonable particularity. Count Four, on the other hand, fails to allege any means by which Redco's use of the RED ROSE mark is invalid.  Click's bare-bones claim in Count Four therefore fails to satisfy the minimum pleading requirements of Rule 8(a), and it should be dismissed.

## IV.   CONCLUSION

For the reasons discussed above, Redco's motion to dismiss will be granted.  The accompanying Order is entered.


**March 24, 2006**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge

25